Good morning, your honors. I'm Brian Staple. I represent the appellate in this case, Michael Bensal. And we have police in court. The facts of this case and all the documents on which you were asked to make your decision involved in a completed stipulator, too. There's no question about any dispute of the facts or any uncertainty about what the facts were. That was all part of a stipulation, facts, and exhibits that was entered into in the district court. So we have this complete set of facts. And the questions that are presented as a result of those, of that complete set of facts, are basically the following. One is a judgment that was rendered by a state court. A judgment that was in favor of a state charter plaintiff. That's the Federal Bank and Trust. A judgment that was rendered pursuant to state law. A judgment that was based on an original transaction officially entered into by only persons other than the United States. I'm sorry, your honor? It did not involve the United States under the FDCPA, the Federal Debt Collection Practices Act, unless if the transaction does not originally involve persons other than the United States. The lender and the borrower both had obligations. I'm sorry, your honor? The lender and the borrower both acknowledged the role of the United States in the documents that evidenced the original transaction, second transaction. But the lender and the borrower were both non-United States entities. I understand that. But the United States was the guarantor. Bank. So they had a relationship with the lender that was basic to the transaction. And as part of the transaction, the guarantor, your client, agreed that he would repay the United States. No. And the United States had to pay him. No. My client never agreed to repay the United States. My client agreed to repay him. And as part of this personal guarantee and part of the original transaction, agreed to repay First Bank and Trust. There was never a guarantee issued by my client, the individual, to the SBA. The guarantee that was made by my client was a personal guarantee given to First Bank and Trust in order to allow First Bank and Trust to make a loan to a separate entity, PCI, while paying some covert investments. So the only guarantee on the second loan, as you've pointed out, the only guarantee given by the SBA was to First Bank and Trust. It had nothing to do with the guarantee given by my client to First Bank and Trust. They were both guarantors. The transaction my client entered into was entirely with First Bank and Trust. Borrower certification. How was your client signed and made initial all the way through to status? If borrower defaults on a loan, SBA may be required to pay a pledge under the SBA guarantee. SBA may then seek recovery of these funds from borrower. Under SBA regulations, borrower may not claim or assert any immunity or defenses available under local law. That was an integral part of the transaction. But the SBA never asserted those claims. At no time did the SBA, that document, The question is whether the original transaction underlying the default judgment was only between the parties or also between the United States. We believe, Your Honor, that it was entirely between. That is perpetual. That's what you believe, but you've got to tell me why that's true in light of what I just read you. Because the transaction says, In the event that such and such happens, then may be under such circumstances, the SBA may assert certain claims. That never happened. The SBA never asserted claims. The SBA never took that position. And again, that was more of a notice than an agreement. In the event something happens, we just want you to know, the SBA may have some claims here that they may want to assert. But my client never agreed to guarantee the SBA guarantee, Any claims? Any claims? Any interest of any kind? The total amount of the money loaned. The total amount of the money loaned? Yes. Oh, that's it. By the time everything was done, it was over 200-something thousand dollars by the private bank, First Bank and Trust. Do you think this was funds loaned to your client? No. Funds loaned to the separate business. But I think that's an important distinction to maintain. The funds were loaned. It was a loan agreement to BCI, the entity. My client guaranteed, that personal guarantee guaranteed that loan. The funds were never made, and the loan was never made to my client. It was to a business. It was a separate business. Was the SBA guarantee limited in percentage or amount? Yes, the SBA guarantee was limited to $70,000. And they eventually paid out $54,000. That's correct, Your Honor. And then they took an assignment of default judgment. Correct. That's correct. For about $300,000. That's correct. And that assignment took place approximately a little short of ten years after the default judgment had been entered against my client in state court. Did that render the default judgment invalid in some respect? No, I don't think so. In the passage of time? I'm sorry? Did the passage of time render the default judgment invalid? No, good question, Your Honor. Under California law, and remember this was a California judgment, rendered by a Superior Court against my client. And, by the way, the SBA doesn't claim any other interest, any other claim, any other debt other than as the assignee of that judgment. But that under California law? Yes, because they have no other claim. There's no other debt to the SBA other than what may be owed on the judgment as assignees of the judgment. The SBA would guarantee some part of the loan? Yes, part of one loan. Up to $70,000? Yes. And when demand was made, they agreed to cough up $54,000, right? Yes, ten years, almost ten years after the judgment was entered. Yes, they agreed to cough up $54,000. $54,000. Correct. So, in their mind, they were still owed the difference between $54,000 and $70,000? I can't speak to why the SBA agreed to accept $54,000, but, yes, they agreed that they would indemnify up to $70,000. I don't know if it was because they could only pay, they were only allowed to pay 75% of whatever it was to the other SBA. For whatever reason, I agree with you, for whatever reason, they only paid $54,000 on the guarantee that they agreed. What I'm interested in now, as I understand it, is that they did extend the life of the underlying default judgment. Yes, they went back. Is that a limitations problem there? There might be if they were trying to sue on the original claim. Correct. That's correct. Yes, the judgment, the SBA went back and it passed the needs of First Bank of Trust, and just on the 10th, California has a 10-year statute of limitations on our judgment. On the last day, they got an extension, so the judgment was. They did it a year in advance, they did it timely, correct? Yes, they did it timely. The judgment has been extended timely. In order to have a valid assignment of someone else's obligation or debt, do you have to have a relationship with the one who had one before? No, not under California. Sure. I think I can make some money on it. Absolutely. You described the collection agency business. That's exactly what they do. They take a judgment that's been rendered that for whatever reason, the judgment creditor, plaintiff, feels like he can't collect on it. He turns it over to a collection agency. They usually pay pennies on the dollar, and then they go out and try and collect. What's wrong with what the district court did? I'm sorry? What is wrong with what the district court did? Well, a number of things. Number one, the district court failed to give a full faith and credit, recognize the precluding effect of the judgment. Under the full faith and credit clause of Section 28 U.S.C. 1738, under that code section, those federal code sections, the district court was obligated and required to give full faith and credit to the state court judgment. What that means is it was obligated to give the state court judgment the same effect, and cases have said repeatedly, not a greater effect and not a lesser effect, but the same effect that any other state court would give that state court judgment. No, unless there's a preemptive federal statute, which there appears to be here. Well, so did you. If it's applicable. Yeah, and I'll address that second. Well, the full faith and credit doesn't get you anywhere. The question is, does the federal statute under which this would be a fraudulent convenience, as I understand it, or the short argument at that, is applicable here or not? Yes, the FDCPA. There's two federal statutes, keep in mind. There's the Federal Collection Practices Act, which is applicable. Yes, there's that statute. And, of course, there's 28 U.S.C. 1738, which is the full faith and credit statute. So there are two federal statutes that are applicable here. In regards to the FDCPA, is that statute applicable to your question? The answer is no. And the reason for that is generally it's considered in the plan admits, the SBA admits, that the FDCPA is generally the exclusive process by which the federal government can collect debts. And when it comes to collecting judgments, which this is, keep in mind, the only debt on which the SBA relies to assert its fraudulent transfer of action is the judgment. So underlying transactions, those have all been. Mr. Brownlee's case, the Fifth Circuit, going at it the other way around, basically said you can go behind the judgment to see whether the underlying agreement was one to which the United States was authority or not. And so that brings us full circle to where we started. If you go, do you agree that you can go behind the judgment or not? For purposes of whether the FDCPA applies. Right. Okay. Two things. One, number one, just to reassert that the SBA only has the rights that the FD&T had, the Federal Banking Trust had under the judgment, the assignment given to SBA specifically limits their rights to the judgment. Now, I understand that and that's what I'm getting to. The next point is, does the FDCPA apply? As I was saying, the answer is no. The FDCPA specifically limits the enforcement of judgments to judgments that have been entered in the name of the United States. This judgment was entered in the name of the United States. Well, it's in our brief, and it is part of the main part. It was entered in the name of the United States. It was entered in the name of the United States. It's 28 U.S.C. 3002, parenthesis 8. Judgment means a judgment order or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding the debt. That's how the FDCPA defines judgment. The FDCPA is the exclusive method for enforcing judgments. The FDCPA specifically says the only judgments that can be enforced under its provisions are those judgments that are in favor of the United States. This judgment was not. It was entered in favor of First Bank of Trust. Assigned to the SBA, they stand in issues and have no greater rights under that judgment than FD&T had. We do receive some time. Yes. I mean, I wanted to ask a question, though. Did Mr. Benzel also sign a contract with the SBA and agree not to assert any state law to deny that? There was a document that says, in the event, and it specifically says, in the event the SBA becomes the holder of the note or the guarantee, then Mr. Benzel, yes, has agreed that the SBA can proceed. In this case, the SBA never became the holder of the note, nor did it become the holder of the guarantee. For whatever reason, the SBA chose to sit back and not assert any of its rights, statutes passed on those rights. And now they only assert the right, not as the SBA, but as the assignee of First Bank and Trust. And there's no doubt that if First Bank and Trust were standing in front of you, that they could not assert the claims under the FDCPA that the SBA is now trying to assert through them. So I've got 26 seconds I'd like to reserve. Thank you. Good morning, Your Honors. May it please the Court, David Weiss, vote of agreement on behalf of the United States Small Business Administration. The issue is whether the FDCPA applies to the claims against Mr. Benzel. Now, it is true. Aren't you going to defend the lawsuit? What is the lawsuit's land here? What is it? Sure. The underlying lawsuit is a federal fraudulent transfer. But you can't have a fraudulent transfer if you're trying to, all right, suppose we say, okay, it's a fraudulent transfer. Then what? But you have to be suing on something. Right. So there was a lawsuit that the SBA brought as assignee of a judgment based on a debt as defined in Section 3.3. Is this a suit? As an association, is this a suit to enforce the judgment? Correct, Your Honor. It's a suit to enforce a judgment. Is it a law complaint to set aside or annul a fraudulent conveyance? It may have been inartfully titled, Your Honor, but I think that's exactly at bottom what it is. And one of the remedies under the FDCPA is to set aside a transfer that is otherwise covered by the act. Then what? Then what? I think the consequence, Your Honor, of that, as the district court had agreed to in its appeal judgment, and as we had prayed for in the complaint, is an injunction that compels the trustee, with respect to the disclaimed interest in the trust, to pay that to the government as having successfully avoided the claim What does the district court determine? That the state court default judgment was a damp within the meaning of the Federal Debt Collection Act. My interpretation. And arose from a loan guaranteed by the SBA. That's my interpretation of the district court's judgment. Yes, Your Honor. I take it as a matter of practicality the reason you want to set aside this state is because otherwise there's no assets to go after. You got it, Your Honor. That's exactly right. So I gather that Mr. Seibel is correct that the SBA never knew directly, never went on this certification saying that they could try and recover. So this is not a suit on that arrangement between the SBA and Mr. Metz, right? Does it matter that you're going after this money as well, only based on your assignment of this judgment? Yes, I guess I'm asking. The answer, which question? I have the same question, i.e., is there any, there's no lawsuit on any obligation directly from Mr. Metz, so just behaviorally lawsuits on the attempt to enforce this judgment. Right, I agree with that procedure. That's exactly correct. But it also, it doesn't matter. And the reason it doesn't matter is, and we cited this in our opening brief to the panel, there is a detailed set of procedures under the Code of Federal Regulations that provide that the original lender, who actually advances the funds, which are supported by the SBA's guarantee, is duty-bound to collect those debts for the benefit, ultimately, of the government. And I would note that in the. . . Yes, but you're not doing that either because if they collected the debt for the benefit of the government, they would run up against this disclaimer problem. Is that how the SBA is trying to do it? Well, the disclaimer problem is an enforcement issue. It's not a whether or not, you know, going to claim that the SBA helped to finance through its 7A loan program, supported by Mr. Metz's guarantee. That's not. . . That's something that the bank, as in almost all financing activities, is privileged under the Code of Federal Regulations, and duty-bound to pursue as it did here. It's sort of almost a taxpayer. The Small Business Administration doesn't go around paying more than it is automatically obligated to pay. Am I correct in that regard? You are, you are. And, in fact, as we pointed out, there are limitations. I believe it's, depending on. . . It's an ascending slight scale, but the debt limitation is 75%. And here, there were some adjustments. I'm not sure. I think SBA has its own sort of lexicon of this, but 54,000 represented the Small Business Administration's good faith estimate of what it was holding on its guarantee at that moment in time. That's correct, Your Honor. I'm going to tell you what happened here because I'm a little curious and not clear. According to the stipulated facts, it looks like the SBA sent a letter to the Benson Trust seeking to recover the default judgment amount on September 8th of 2011. The actual default judgment, though, wasn't assigned to the SBA until October 1st, 2011. And so I'm going to try to understand this discrepancy because I'm not sure how SBA can ask for something it didn't own. In the formal assignment of the judgment, I mean, the SBA, once it had paid the guarantee claim, had rights directly to enforce a debt which was owed to the United States. The bank had prosecuted it. The formal assignment, in the scheme of things, was done afterwards. So you're correct in terms of when the formal assignment of that. It probably didn't have any right because, indeed, the limitations period was not expired. My understanding is that it may begin again with the assignment, but at that point, it didn't have any right, probably. Well, the judgment was still good. It evidenced a debt. It wasn't their judgment. The judgment was in the name of the bank, you're right. And then the judgment was assigned after the government discovered that there was an asset that would be available, which, under federal law. And what consideration did SBA provide to the bank in exchange for the assignment of the default judgment? Well, I think consideration was, in part, payment of the guarantee. I'm not sure that there's anything in the record that's for it. Eight years earlier, $54,000, is that what you're talking about? Right. Correct. But there's nothing under the Code of Federal Regulations that obligates the SBA to take an assignment of a claim after it stepped up to the plate on its guarantee under this procedure that governs it. I was just saying that it's an easy assignment. It could have just not drawn itself, but, A, it didn't commit these crimes. Correct. Yeah, it could have. Well, I'm not sure that it didn't need to because the bank had done the heavy lifting, as it was required to do, on CSBA. So tell me now why this, whatever it is, this judgment between two other people is an attempt to the United States. Sure. So, A, why is it an attempt to the United States? And, B, why is it an attempt to the United States for $300,000? Well, it's a debt because under 3002, and I'm sorry for reading, A, under 3002.3, it's an amount that is owing to the United States on account of a direct loan or loan insured or guaranteed by the United States. So, generally speaking, it's an amount that's owed to the United States because they got it decided for somebody else. Well, as you pointed out in your earlier question, which is sadly right, under Sobranes, which I realize is Fifth Circuit and it doesn't bind the court, the court goes behind the judgment to look for the source. And the source is an SBA-guaranteed loan, which fits squarely within the four corners of 3002.3. So it is a debt. Well, arguably both, but I mean, it's clearly A. No, I think it's clearly not A. Why is it A? Because it's a debt guaranteed by the United States. That was the source of the debt. But that's not the debt. The debt you're pursuing on is the judgment. Correct. And the underlying debt. Or if it's B, then it's originally entered in. It is an indebtedness to the United States because the United States took assignment of an SBA loan. And to answer your second question, the amount of the judgment that's assumed in this hybrid bifurcated judgment clearly exceeds the value of the trust sheet. I would agree with you that the first law is clearly not covered because it was, like Sobranes, headed into by private parties without the SBA's assistance. But the underlying loan, you said, the default judgment bill, was entered into and signed exclusively by BCI and the private lender. There were two clauses, Your Honor. I know. But all that we're talking about in this default judgment was entered into and signed by BCI and the private lender. The first loan, that's true. The second loan was entered into pursuant to the SBA 7A program, which is what we're talking about. And that's where the SBA supported. That's where Mr. Bensel signed a contract saying he wouldn't assert state or local laws to defeat the claim if the SBA was to hold her. So the SBA has always been involved. And he involved. I mean, it looks like it's for work to try to determine. But it seems like the limiting language in subsection B, it says, and I'm trying to figure out if the default judgment here would be excluded by the limiting language in subsection B as a contract originally entered into by only persons other than the United States. Right. Well, I think the classic example of that is Socrates, where you had a private lender making a private loan, and then they were to intervening FSLIC and FKIC receiverships. And then those claims were assigned by the FKIC's receiver. And that's a classic example of the exclusionary language in B. There are a lot of documents floating around. Yes, sir. But the less judgment he is pointing out, the agreement contract that was sued on and as to which the judgment represents was between the two private parties. There were also separate guarantor agreements. So the question is, is that good enough? In other words, are we looking at the assaults transaction? Are we looking at the particular contract that the judgment represents? The judgment doesn't represent anything about the SBA, any application of or to the SBA. Well, the judgment, we're looking at the second loan. The judgment simply liquidated the amount of the claim. The threshold test under the statute, under the claim beneath the statute, is debt is an amount that is going to the United States on account of a direct loan or loan guaranteed by the United States. At the moment, your client paid the $54,000. If that was accepted by the other party, what was owed the United States? What was owed the United States? What was owed the SBA? The SBA debt was, I'm not sure the precise amount. I know it's in the facts, but it was several hundred thousand dollars. It wasn't limited to the amount that the SBA. How does the SBA load that amount of money, Doctor? I'm not sure I'm understanding that. It guarantees, and all that paid out, all the money that the SBA lost was $54,000. Is that correct? Plus the attorney fees to deal with this. But no, the SBA, clearly on its guarantee in favor of the bank, that's what it was. It's out of pocket once. So the out-of-pocket loss of that's over here, it seems like. The SBA was assigned the default judgment two months after Mr. Benson inherited. His trust should share it six years after it paid the guarantee. Right. So it seems like the assignment of default judgment was entirely unrelated to the SBA's role as a guarantor. Is that right? No, that's not correct. I'll tell you why that's not correct. Because before the SBA guarantee, because the bank was duty-bound by law under the Code of Federal Regulations to liquidate its claims here on behalf of the government, this loan, like all the other SBA loans, the trillions of dollars in financing, would not have been made but for the SBA standing behind in its credit. So the fact that the SBA, in its separate dealings with the bank, honored its obligations to the bank doesn't transmute the debt that's owing to the government or limit it by virtue of the amount that was paid on the guarantee. The SBA always had the right to take over. That's what the Code of Federal Regulations we cited said, if it wanted to, but it wasn't obligated to. And that doesn't limit it from using what Congress has said and what this Court in Gianelli said is the exclusive procedures to enforce a judgment. The statute doesn't speak of a judgment only in the name of the United States. This was an SBA debt that the bank reduced to judgment. How is SBA acting differently here than any debt collector? Well, I can't. I'm not sure that I understand Your Honor's question in terms of how other debt collectors act. I've got to get an assignment from somebody and then go after that money from that assignment. Does it matter that you were SBA? Well, clearly, if the SBA hadn't guaranteed this loan under the rationale of Sobranes, which makes perfect sense, it makes all the difference because I, as an SBA, at the end of this book of judgment, couldn't take advantage of the Federal Debt Collection Procedures Act. to enforce the claim. All right. So let's do a little bit of a story and describe what this is an action for and what the statute provides for an action for. This debt language that we've relied on is a definition, right? What does it plug into? What is the cause of action here? It's under 3304A, Your Honor, of 28 U.S.C. 3304A. Okay. Okay. A debt arising before transfer. Transferring by obligation is fraudulent as to a debt to the United States. But this statute, as such, provides for suing or a debt to the United States. And the cause of action and the claim, the complaint, doesn't say we're suing a debt to the United States. It doesn't say what it's doing. What is it doing? All right. It's trying to set aside a fraudulent transfer, presumably because there's some, I guess because it thinks there's a debt to the United States, but the statute does not itself provide for the enforcement of the debt. The statute provides procedures to enforce a judgment that's based on a covered debt. Suppose there were no fraudulent transfer and the United States just wanted to sue on this judgment without there being a fraudulent transfer. What would it do? Would it be under the statute? What would it be under? I think if the SBA had filed a direct action, which it typically doesn't do, presumably it could have filed a federal diversity action, something that that would support it. It could have filed a regional question jurisdiction, I suppose. Monica, I don't know if it would have gotten an obligation of its own, but that's not the way that. There's also the fact that, as Mr. Seibel pointed out, that the certification says that SBA may try and collect from him, but it doesn't really explain where it gets the authority to collect from him or says that he owes it to them. Sure. If this assignment could have, the SBA could have done this in its own name, but it wasn't obligated to. So I think it could have pursued Mr. Benson directly. I'm saying originally, my apologies, originally when the suit was filed or demand was made, the collection activities were pursued. What the Code of Federal Regulations provides is that either party can do this, but it's reserved to the lender that finances it, and that's practice how things are typically done. So to answer your question, at least I'll try to do it, this was an action by the SBA because it had taken an assignment of a debt, which it had paid under an SBA guarantee, to use federal law, which Congress said in 1990 it could do and it was a specific thing to do, to enforce. In some cases, it seems kind of fortuitous. Maybe. That this assignment happened to be from an underlying judgment as to which, not the judgment, but the transaction underlying the judgment of the SBA. Why does it have nothing to do with anything? Why does it have everything to do with everything? Because it is what a covered debt is under the FDCPA. It's what the legislative history to the statute says. You look to the underlying claim. If you look at the FDC versus National Business, that's not the same. The claim here underlying the judgment was just between those two parties. There were other documents and other agreements, but what the judgment was about was just that Mr. Bensal owed money to the bank. No, the judgment was about that Mr. Bensal owes money to the bank because of the SBA, and that that debt can be transferred and assigned directly to the SBA at any time. So this was a debt that was owed to the bank because the bank funded the loan, but the loan would never be funded but for the government's SBA loan program, which is why it's a covered debt. That's my topology, Your Honor. Thank you, Your Honor. Briefly, Your Honors. I just want to emphasize that the debt we're talking about here is the judgment. It's not an underlying. It's not any of the underlying documents. To the extent that they existed, they were merged under California law into the judgment we cited in our brief. To the extent the SBA had a direct cause of action against Mr. Bensal, that has long expired. They never inserted it. They never alleged it. They never claimed it, and it's never been determined. I can assure you that if they'd have filed their claim, I would have been able within 20 days to go up with an answer that would have allowed the motion to strike. The only basis for them being here is because they are the assidues of First Bank and Trust. They have no more rights in this court than First Bank and Trust should have. In fact, that's what the assignment specifically says, that we, First Bank and Trust, are giving you our rights. That's all they have. And there's no doubt under the FTCPA, 128 U.S.C. 1738, that FBT, FBT would be able to make the kind of claims that the SBA is claiming. If you accept their argument, that you are giving the California judgment in their hands, more credibility and a greater and different effect than that California judgment would be held in the hands of anybody else. Once you get to there, you're pretty good until you get to that point, because clearly the statute is preemptive of something. Your argument is it's not preemptive of this, and that may be right. But if it were preemptive of it, then the fact that the California judgment wouldn't allow this is really not the point. Except for the fact that the Constitution of 1738 say, you guys are required to give that judgment the same effect. The same effect. So, thank you. Thank you, Your Honors. Thank you. Thank you, Your Honors.
judges: Hawkins, Berzon, Murguia